UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| MARKEL INSURANCE COMPANY,<br>                    Plaintiff,<br><br>          v.<br><br>DENNIS REED, SPORTSZONE<br>CORPORATION, ERIN TUFTS, and<br>BENJAMIN TUFTS,<br>                         Defendants. | Civil Action No.<br><br><br><br>**COMPLAINT FOR<br>DECLARATORY JUDGMENT** |

## INTRODUCTION

Markel Insurance Company ("MIC") brings this action against Dennis Reed, SportsZone

Corporation ("SportsZone"), Erin Tufts and Benjamin Tufts for a declaratory judgment that MIC

has no duty to defend or indemnify Reed or SportsZone in connection with the underlying suit

brought against them by Erin Tufts and Benjamin Tufts.

## THE PARTIES

1.      MIC is an insurance company incorporated in Illinois with a principal place of

business in Virginia.

2.      Dennis Reed is an individual who, on information and belief, resides at 1 Jenny

Dickey Road, Derry, New Hampshire.

3.      SportsZone is a New Hampshire Corporation with a principal place of business at

7 A Street, Derry, New Hampshire.

4.      Erin Tufts is an individual who resides at 708 Maple Street, Manchester, New

Hampshire.

5.      Benjamin Tufts is an individual who resides at 708 Maple Street, Manchester,

New Hampshire.

<u>JURISDICTION</u>

6.      The District Court's jurisdiction over this matter is based upon 28 U.S.C. § 1332 and 28 U.S.C. § 2201.  This is an action between citizens of different states, and the amount in controversy exceeds $75,000.

<u>THE UNDERLYING LAWSUIT</u>

7.      On or about August 29, 2018, Erin Tufts and Benjamin Tufts filed a verified complaint against Reed, SportsZone, and Amateur Athletic Union ("AAU"), New Hampshire Superior Court, Rockingham County, No. 218-2018-CV-00947 (the "underlying lawsuit").  A copy of the underlying lawsuit is attached as Exhibit A.

8.      The underlying lawsuit alleges that, in 2000, when Erin was 10 years old, she attended a tryout for the New Hampshire Shooting Stars, an AAU program based in Derry and Londonderry.

9.      The underlying lawsuit alleges that, at the tryout, Reed took Erin aside and introduced himself as an AAU coach of the older girls.

10.      The underlying lawsuit alleges that Reed provided Erin with individual instruction during the tryout and she made the team.

11.      The underlying lawsuit alleges that in 2002, when Erin was approximately 11 years old, she began taking private lessons with Reed at the SportsZone located in Derry.

12.      The underlying lawsuit alleges that Reed was the owner of SportsZone.

13.      The underlying lawsuit alleges that Reed used the lessons to groom Erin for sexual activity.

14.     The underlying lawsuit alleges that, in the following summers, Erin attended basketball day camps operated by Reed and SportsZone, and Reed continued his manipulation and grooming.

15.     The underlying lawsuit alleges that, in or about 2004, SportsZone, through Reed, hired Erin to work as concession staff, and that Reed, who owned SportsZone, directly supervised Erin in the job.

16.     The underlying lawsuit alleges that, in or about May 2005, when Erin was 15, Reed started to touch Erin in a sexual way and for purposes of his own sexual gratification.

17.     The underlying lawsuit alleges that the touching occurred at SportsZone prior to and following Erin's "private lessons" and also when Erin was supposed to be working.

18.     The underlying lawsuit alleges that Reed used his position of authority to compel Erin's obedience and forced her acquiescence through both physical actions and emotional compulsion.

19.     The underlying lawsuit alleges that Reed's inappropriate actions, which included kissing and rubbing, occurred in the presence and direct line of sight of other SportsZone employees and customers, but no one reported it, addressed it, or stopped it.

20.     The underlying lawsuit alleges that, after Erin turned 16, Reed's sexual advances included emotionally compelled intercourse at a time when Erin was a SportsZone employee and Reed her boss.

21.     The underlying lawsuit alleges that the Director of Operations of SportsZone observed Reed and Erin alone via a video surveillance camera and preserved the video because of what he saw.

22.     The underlying lawsuit alleges that the Director of Operations advised Reed that he saw the video and that he had preserved it but did nothing to stop Reed's ongoing abuse of Erin.

23.     The underlying lawsuit alleges that Erin participated in AAU basketball tournaments in other states, and that Reed, who coached an older girls' AAU team, attended the same tournament as Erin at least once and used the opportunity to compel sexual activity, including intercourse, from Erin.

24.     The underlying lawsuit alleges that Reed's abuse continued when he asked Erin to coach with him through AAU after Erin reached the age of 18.

25.     The underlying lawsuit alleges that Reed continued his abuse and manipulation when he visited Erin in college, using these occasions to again engage in sexual intercourse.

26.     The underlying lawsuit alleges that, throughout college and in the years following college, Erin continued to work at SportsZone with Reed as her boss.

27.     The underlying lawsuit alleges that, when Erin began dating Benjamin, Reed interjected himself in the relationship, making exceedingly personal inquiries to both Erin and Benjamin, requesting explicit details of their intimacy, and demanding that he provide their premarital counseling.

28.     The underlying lawsuit alleges that Erin and Benjamin married on October 8, 2015.

29.     The underlying lawsuit alleges that, two weeks before the wedding, Reed provided Benjamin with explicit sexual direction regarding Erin and told Benjamin not to tell Erin or Reed's wife about the conversation.

30.     The underlying lawsuit alleges that Reed's abuse of Erin and Benjamin ended in July 2018 when Erin's family confronted her about cutting herself.

31.     The underlying lawsuit alleges that the Tufts confronted Reed about his abuse, and he did not deny it.

32.     The underlying lawsuit asserts the following counts against Reed: Count I, Aggravated Sexual Assault; Count II, Intentional Infliction of Emotional Distress; Count III, Civil Assault and Battery; and Count X, Loss of Consortium.

33.     The underlying lawsuit asserts the following counts against SportsZone: Count V, Negligence (Vicarious and Direct Liability); Count VI, Negligent Hiring and Retention; Count VII, Negligent Training; Count VIII, Negligent Supervision; Count IX, Negligence (Failure to Report – Negligence *Per Se*); and Count X, Loss of Consortium.

34.     The underlying lawsuit seeks an award of compensatory damages, enhanced compensatory damages, punitive damages, costs, interest, and attorneys' fees

### THE INSURANCE POLICIES

35.     MIC insures SportsZone Corp. and SportsReal, LLC under the following Commercial General Liability Policies: policy number 3602AH303942-0, effective 11/1/07 – 11/1/08 (the "2007-08 Policy"); policy number 3602AH303942-1, effective 11/1/08 – 11/1/09 (the "2008-09 Policy"); policy number 3602AH303942-2, effective 11/1/09 – 11/1/10 (the "2009-10 Policy"); policy number 3602AH303942-4, effective 11/1/10 – 11/1/11 (the "2010-11 Policy"); and policy number 3602AH303942-5, effective 11/1/11 – 11/1/12 (the "2011-12 Policy") (collectively, the "Policies").

36.     The Limits of Liability under each of the Policies except the 2011-2012 Policy are $1,000,000 Each Occurrence Limit; $1,000,000 Personal and Advertising Injury Limit;

$1,000,000 Products-Completed Operations Aggregate Limit; $5,000,000 General Aggregate Limit (Other Than Products-Completed Operations).  The Limits of Liability under the 2011-2012 Policy are the same except that the Products-Completed Operations Aggregate Limit in the 2011-12 Policy is $2,000,000.

37.     The Coverage A Insuring Agreement in each of the Policies states:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee"

6

authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. Of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

38.    The 2007-08 Policy, the 2008-09 Policy, and the 2009-10 Policy each contains a Sexual Abuse & Sexual Molestation Liability Coverage Endorsement providing limits of $1,000,000 per person, per occurrence and $1,000,000 aggregate per policy period for the 2007-08 and 2008-09 policy periods and $1,000,000 per person, per occurrence and $2,000,000 aggregate for the 2009-10 policy period.

39.     The Insuring Agreement of the Sexual Abuse & Sexual Molestation Liability

Coverage Endorsement states:

1.      Insuring Agreement

We will pay those sums the insured becomes legally obligated to pay as damages
that result in "bodily injury", "personal injury" or "advertising injury" because of
sexual abuse, molestation or exploitation arising from negligent hiring, training
and supervision practices.

>   The term "bodily injury" includes mental anguish or emotional distress if
>   such mental anguish or emotional distress:
>
>   i.      directly results from physical contact during an act of sex abuse,
>           molestation or exploitation; or
>
>   ii.     directly results from the claimant actually witnessing an act of sex
>           abuse, molestation or exploitation, whether or not there is a
>           physical contact between the claimant and the perpetrator(s).

40.     Exclusion (b) of the Sexual Abuse & Sexual Molestation Liability Coverage

Endorsement bars coverage for "[a]ny obligation to pay fines, penalties, punitive damages,

exemplary damages or aggravated damages."

41.     Exclusion (c) of the Sexual Abuse & Sexual Molestation Liability Coverage

Endorsement bars coverage for "[a]ny person who takes part in inflicting sexual abuse, sexual

molestation, [or] sexual exploitation upon another person."

42.     Exclusion (d) of the Sexual Abuse & Sexual Molestation Liability Coverage

Endorsement precludes coverage for "[a]ny person who knowingly allows any sexual abuse,

molestation, or sexual exploitation committed by an 'employee' or other persons under the

supervision of the insured."

43.     The Sexual Abuse & Sexual Molestation Liability Coverage Endorsement also

states:

The Limits of Insurance shown in the Schedule of this Endorsement fix the most
we will pay regardless of the number of:

a.      Insureds;

b.      Claims made or suits brought; or

c.      Persons or organizations making claims or bringing suits.

Multiple incidents of sexual abuse, sexual molestation or sexual exploitation to one person, whether consisting of one or any combination among these, shall be deemed to be one "occurrence" and shall be subject to the limits and any other insurance policy issued by this Company in effect at the time of the first incident even if subsequent incidents of that "occurrence" take place after the expiration of the policy.

44.     The 2010-2011 Policy and the 2011-2012 Policy each contains an Abuse or Molestation Coverage Endorsement providing limits of $1,000,000 per person, per occurrence $2,000,000 aggregate.

45.     The Insuring Agreement of the Abuse or Molestation Coverage Endorsement states:

1.      Insuring Agreement

We will pay those sums the insured becomes legally obligated to pay as damages that result in "bodily injury", "personal and advertising injury", or any other injury because of abuse, molestation or exploitation arising from negligent employment, training, investigation, reporting to the proper authorities, or failure to so report, or retention and supervision of a person for whom any insured is or ever was legally responsible. Coverage includes the actual, alleged, or threatened abuse, molestation or exploitation by anyone of any person while in the care, custody or control of the insured.

The term "bodily injury" includes mental anguish or emotional distress.

46.     Exclusion (b) of the Abuse or Molestation Coverage Endorsement bars coverage for "[a]ny obligation to pay fines, penalties, punitive damages, exemplary damages or aggravated damages."

47.     Exclusion (c) of the Abuse or Molestation Coverage Endorsement bars coverage for "[a]ny person who takes part in inflicting abuse, molestation, or exploitation upon another person."

48.     Exclusion (d) of the Abuse or Molestation Coverage Endorsement precludes coverage for "[a]ny person who remains passive upon gaining knowledge of any actual, alleged, or threatened abuse, molestation, or exploitation committed by an 'employee' or 'voluntary worker' of the insured."

49.     The Abuse or Molestation Coverage Endorsement also states:

> The Limits of Insurance shown in the Schedule of this endorsement fix the most we will pay for abuse, molestation, or exploitation.

> The coverage provided by this endorsement does not provide any duplication or overlap of coverage for the same claim or "suit".

Multiple incidents of abuse, molestation or exploitation involving a person which take place over multiple policy periods for which this coverage is provided by us shall be deemed as one "occurrence" and shall be subject to the coverage and limits in effect at the time of the first incident.

50.     Section I – Coverages, paragraph 2.e. in each of the Policies states:

This insurance does not apply to: …

e.      "Bodily injury" to:

        (1)     An "employee" of the insured arising out of and in the course of:

                (a)     Employment by the insured; or

                (b)     Performing duties related to the conduct of the insured's business; or

        (2)     The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (**1**) above.

This exclusion applies:

        (1)     Whether the insured may be liable as an employer or in any other capacity; and

(2)    To any obligation to share damages with or repay someone else
who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured
contract".

51.    Each of the Policies also contains an endorsement titled "Employment-Related

Practices Exclusion," which states, in relevant part:

A.    The following exclusion is added to Paragraph **2., Exclusions** of **Section I –
Coverage A – Bodily Injury And Property Damage Liability**:

This insurance does not apply to:

"Bodily injury" to:

(1)    A person arising out of any:

(a)    Refusal to employ that person; or

(b)    Termination of that person's employment; or

(c)    Employment-related practices, policies, acts or omissions, such as
coercion, demotion, evaluation, reassignment, discipline,
defamation, harassment, humiliation or discrimination directed at
that person; or

(2)    The spouse, child, parent, brother or sister of that person as a consequence
of "bodily injury" to that person at whom any of the employment-related
practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1)    Whether the insured may be liable as an employer or in any other
capacity; and

(2)    To any obligation to share damages with or repay someone else who must
pay damages because of the injury.

52.    Section II – WHO IS AN INSURED, paragraph 1(d), of each Policy states:

1.    If you are designated in the Declarations as: …

d.    An organization other than a partnership, joint venture or
limited liability company, you are an insured. Your
"executive officers" and directors are insureds, but only

11

> with respect to their duties as your officers or directors.
> Your stockholders are also insureds, but only with respect
> to their liability as stockholders.

53.　"Executive officer" is defined in each of the Policies to mean "a person holding

any of the officer positions created by [SportsZone's] charter, constitution, by-laws or any other

similar governing document."

54.　Section II – WHO IS AN INSURED, paragraph 2(a), of each of the Policies

states that "employees" are insureds, "but only for acts within the scope of their employment by

you or while performing duties related to the conduct" of SportsZone's business.

55.　Each of the Policies contains a Sports Liability Endorsement that amends Section

II – WHO IS AN INSURED to include as insureds "[t]eam members, managers, coaches,

assistants, referees and officials, sponsors and other individuals participating in the official

functions of the named insured." This coverage is "limited to 'bodily injury', 'property damage'

and 'personal and advertising injury' arising out of the conduct of the operation or conduct of

'sports activities' only."

56.　"Sports activities" is defined in each of the Policies as "the organization,

promotion, administration and conduct of games, practices, tournaments and related activities of

the named insured."

57.　The Policies each contain a Punitive Damages Exclusion Endorsement that states:

> It is understood and agreed that coverage under this policy does not apply
> to punitive or exemplary damages, nor to fines, penalties or sanctions
> imposed by law, nor to defense costs related to any of the above.

58.　The 2010-11 and 2011-12 Policies contain a Multiple Policies Endorsement that

states:

> If this policy and any other liability policy issued to you by the MARKEL
> INSURANCE COMPANY apply to the same occurrence, the maximum
> limit of our liability under all such policies combined shall not exceed the
> highest applicable limit of liability under any one policy among them.

59.     Paragraph 2 of the Conditions of each of the Policies requires an insured to notify MIC as soon as practicable of an "occurrence" which may result in a "claim."

### THE POLICIES DO NOT PROVIDE COVERAGE FOR THE UNDERLYING LAWSUIT

60.     The underlying lawsuit described in paragraphs 7 through 34 above is not covered under the Policies issued by MIC to SportsZone.

61.     Reed does not qualify as an Insured under the Policies with respect to the underlying lawsuit.

62.     On October 3, 2018, MIC sent certified letters to Reed and SportsZone through their attorneys informing them of MIC's position with respect to coverage for the underlying lawsuit.  MIC declined to defend Reed, and agreed to defend SportsZone subject to a full reservation of its rights under the policy.

### COUNT I
### (Declaratory Judgment- Duty to Defend - Reed)

63.     MIC repeats and realleges the allegations of paragraphs 1-62.

64.     MIC does not have a duty to defend Reed in the underlying lawsuit for one or more of the following reasons:

a)     To the extent Reed was an "executive officer" of SportsZone during any of the policy periods at issue, he qualifies as an insured only with respect to his duties as an officer. The misconduct alleged against Reed did not occur with respect to his duties as an officer of SportsZone. Therefore, he is not an insured under the Policies.

b)     To the extent Reed was an employee of SportsZone during any of the policy periods at issue, he qualifies as an insured only for acts within his scope of employment by SportsZone or while performing duties related to the conduct of SportsZone's business. The misconduct alleged against Reed did not occur within the

scope of his employment or while he was performing duties related to the conduct of SportsZone's business. Therefore, he is not an insured under the Policies.

       c)      The Sexual Abuse & Sexual Molestation Liability Coverage Endorsement bars coverage for "[a]ny person who takes part in inflicting sexual abuse, sexual molestation, [or] sexual exploitation upon another person." As the person alleged to have sexually abused, molested and exploited Erin Tufts, Reed is not entitled to coverage under the 2007-08 Policy, the 2008-09 Policy, and the 2009-10 Policy.

       d)      The Abuse or Molestation Coverage Endorsement bars coverage for "[a]ny person who takes part in inflicting abuse, molestation, or exploitation upon another person." As the person alleged to have sexually abused, molested and exploited Erin Tufts, Reed is not entitled to coverage under the 2010-11 Policy and the 2011-12 Policy.

       e)      The Sports Liability Endorsement in the Policies provides that "[t]eam members, managers, coaches, assistants, referees and officials, sponsors and other individuals participating in the official functions of the named insured" qualify as insureds under the Policies but only for "'bodily injury', 'property damage' and 'personal and advertising injury' arising out of the operation or conduct of 'sports activities.'" "Sports activities" are defined in the Policies as "the organization, promotion, administration and conduct of games, practices, tournaments and related activities of the named insured." The misconduct alleged against Reed did not arise out of the operation or conduct of "sports activities." Therefore, Reed is not an insured under the Sports Liability Endorsement.

f)      Neither Erin Tufts nor Benjamin Tufts sustained "bodily injury" during the 2007-08, 2008-09, 2009-10, 2010-11, or 2011-12 policy periods.

g)      The Policies do not cover "bodily injury" if an insured under Paragraph 1 of Section II of the Policies or an employee authorized to give notice of an "occurrence" or claim knew prior to the policy period that the "bodily injury" had occurred in whole or in part. Reed, and possibly others, knew, prior to the policy period that "bodily injury" has occurred in whole or in part.

h)      Section I – Coverages, paragraph 2.e., in each of the Policies states that "insurance does not apply to … '[b]odily injury' to … [a]n employee of the insured arising out of and in the course of … [e]mployment by the insured; or … [p]erforming duties related to the conduct of the insured's business." To the extent Erin Tufts sustained "bodily injury," such "bodily injury" arose out of and in the course of her employment by SportsZone or during the performance of duties related to the conduct of SportsZone's business.

i)      The Policies contain an Employment-Related Practices Exclusion that states that "insurance does not apply to … 'bodily injury' to … [a] person arising out of any … [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." The exclusion further precludes coverage to a spouse of such a person as a consequence of "bodily injury" to the person at whom the employment-related practices is directed. To the extent Erin Tufts sustained "bodily injury," such "bodily injury" arose out of employment-related practices.

j) The "bodily injury" alleged by Erin Tufts and Benjamin Tufts was expected and intended by Reed and others and therefore, the Policies' exclusion for injury expected or intended from the standpoint of the insured bars coverage.

k) The liability alleged in the underlying lawsuit falls outside the coverage of the Sexual Abuse & Sexual Molestation Liability Coverage Endorsement and outside the coverage of the Abuse or Molestation Coverage Endorsement.

l) Paragraph 2 of the Conditions of each of the Policies requires an insured to notify MIC as soon as practicable of an "occurrence" that may result in a claim. Reed and SportsZone knew or should have known that the misconduct alleged by Erin Tufts and Benjamin Tufts could result in a claim but they did not report the misconduct to MIC as soon as practicable.

65.     There is an actual controversy among the parties concerning MIC's duty to defend Reed for the claims in the underlying lawsuit.

**COUNT II**
**(Declaratory Judgment – Duty to Indemnify - Reed)**

66.     MIC repeats and realleges the allegations of paragraphs 1-65.

67.     MIC does not have a duty to indemnify Reed for any damages incurred in the underlying lawsuit for one or more of the following reasons

a) To the extent Reed was an "executive officer" of SportsZone during any of the policy periods at issue, he qualifies as an "insured" only with respect to his duties as an officer. The misconduct alleged against Reed did not occur with respect to his duties as an officer of SportsZone. Therefore, he is not an insured under the Policies.

b) To the extent Reed was an employee of SportsZone during any of the policy periods at issue, he qualifies as an "insured" only for acts within his scope of

16

employment by SportsZone or while performing duties related to the conduct of
SportsZone's business. The misconduct alleged against Reed did not occur within the
scope of his employment or while he was performing duties related to the conduct of
SportsZone's business. Therefore, he is not an insured under the Policies.

c)      The "bodily injury" alleged by Erin Tufts and Benjamin Tufts was
expected and intended by Reed and others and therefore, the Policies' exclusion for
injury expected or intended from the standpoint of the insured bars coverage.

d)      The Sexual Abuse & Sexual Molestation Liability Coverage Endorsement
bars coverage for "[a]ny person who takes part in inflicting sexual abuse, sexual
molestation, [or] sexual exploitation upon another person." As the person alleged to have
sexually abused, molested and exploited Erin Tufts, Reed is not entitled to coverage
under the 2007-08 Policy, the 2008-09 Policy, and the 2009-10 Policy.

e)      The Abuse or Molestation Coverage Endorsement bars coverage for
"[a]ny person who takes part in inflicting abuse, molestation, or exploitation upon
another person." As the person alleged to have sexually abused, molested and exploited
Erin Tufts, Reed is not entitled to coverage under the 2010-11 Policy and the 2011-12
Policy.

f)      The Sports Liability Endorsement in the Policies provides that "[t]eam
members, managers, coaches, assistants, referees and officials, sponsors and other
individuals participating in the official functions of the named insured" qualify as
insureds under the Policies but only for "'bodily injury', 'property damage' and 'personal
and advertising injury' arising out of the operation or conduct of 'sports activities.'"
"Sports activities" are defined in the Policies as "the organization, promotion,

17

administration and conduct of games, practices, tournaments and related activities of the named insured." The misconduct alleged against Reed did not arise out of the operation or conduct of "sports activities." Therefore, Reed is not an insured under the Sports Liability Endorsement.

g)      The Policies do not cover "bodily injury" if an insured under Paragraph 1 of Section II of the Policies or an employee authorized to give notice of an "occurrence" or "claim" knew prior to the policy period that the "bodily injury" had occurred in whole or in part. Reed, and possibly others, knew, prior to the policy period that "bodily injury" has occurred in whole or in part.

h)      Neither Erin Tufts nor Benjamin Tufts sustained "bodily injury" during the 2007-08, 2008-09, 2009-10, 2010-11, or 2011-12 policy periods.

i)      Section I – Coverages, paragraph 2.e., in each of the Policies states that "insurance does not apply to … '[b]odily injury' to … [a]n employee of the insured arising out of and in the course of … [e]mployment by the insured; or … [p]erforming duties related to the conduct of the insured's business." To the extent Erin Tufts sustained "bodily injury," such "bodily injury" arose out of and in the course of her employment by SportsZone or during the performance of duties related to the conduct of SportsZone's business.

j)      The Policies contain an Employment-Related Practices Exclusion that states that "insurance does not apply to … 'bodily injury' to … [a] person arising out of any … [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." The exclusion further precludes coverage to a

spouse of such a person as a consequence of "bodily injury" to the person at whom the

employment-related practices is directed. To the extent Erin Tufts sustained "bodily

injury," such "bodily injury" arose out of employment-related practices.

k)      Paragraph 2 of the Conditions of each of the Policies requires an insured

to notify MIC as soon as practicable of an "occurrence" that may result in a claim. Reed

and SportsZone knew or should have known that the misconduct alleged by Erin Tufts

and Benjamin Tufts could result in a claim but they did not report the misconduct to MIC

as soon as practicable.

l)      The liability alleged in the underlying lawsuit falls outside the coverage of

the Sexual Abuse & Sexual Molestation Liability Coverage Endorsement and outside the

coverage of the Abuse or Molestation Coverage Endorsement.

m)      The Policies exclude coverage for punitive damages. The Sexual Abuse &

Sexual Molestation Liability Coverage Endorsement and the Abuse or Molestation

Coverage Endorsement preclude coverage for fines, penalties, punitive damages,

exemplary damages, and aggravated damages.

n)      The Sexual Abuse & Sexual Molestation Liability Coverage Endorsement

states that "[m]ultiple incidents of sexual abuse, sexual molestation or sexual exploitation

to one person, whether consisting of one or any combination among these, shall be

deemed to be one 'occurrence' and shall be subject to the limits and any other insurance

policy issued by this Company in effect at the time of the first incident even if subsequent

incidents of that 'occurrence' take place after the expiration of the policy." The Abuse or

Molestation Endorsement states: "Multiple incidents of abuse, molestation or exploitation

involving a person which take place over multiple policy periods for which this coverage

is provided by us shall be deemed as one 'occurrence' and shall be subject to the

coverage and limits in effect at the time of the first incident. If incidents of abuse,

molestation or exploitation took place over multiple policy periods for which coverage is

provided, only the coverage and limits of the Policy in effect at the time of the first

incident shall apply." To the extent it is determined that multiple incidents of abuse,

molestation, or exploitation occurred, they are one "occurrence" subject to the coverage

in effect at the time of the first incident.

   o) The 2010-11 and 2011-12 Policies state: "If this policy and any other

liability policy issued to you by the MARKEL INSURANCE COMPANY apply to the

same occurrence, the maximum limit of our liability under all such policies combined

shall not exceed the highest applicable limit of liability under any one policy among

them."  If one or more Policies is held to apply to the same occurrence, the maximum

limit of liability available shall not exceed the highest applicable limit of liability under

any one of those Policies.

68. There is an actual controversy among the parties concerning MIC's duty to

indemnify Reed for the claims in the underlying lawsuit.

**COUNT III**
**(<u>Declaratory Judgment- Duty to Defend - SportsZone</u>)**

69. MIC repeats and realleges the allegations of paragraphs 1-68.

70. MIC does not have a duty to defend SportsZone in the underlying lawsuit for one

or more of the following reasons:

   a) The Policies do not cover "bodily injury" if an insured under Paragraph 1

of Section II of the Policies or an employee authorized to give notice of an "occurrence"

or claim knew prior to the policy period that the "bodily injury" had occurred in whole or

20

in part. Reed, and possibly others, knew, prior to the policy period that "bodily injury" has occurred in whole or in part.

b)       Neither Erin Tufts nor Benjamin Tufts sustained "bodily injury" during the 2007-08, 2008-09, 2009-10, 2010-11, or 2011-12 policy periods.

c)       Section I – Coverages, paragraph 2.e., in each of the Policies states that "insurance does not apply to … '[b]odily injury' to … [a]n employee of the insured arising out of and in the course of … [e]mployment by the insured; or … [p]erforming duties related to the conduct of the insured's business." To the extent Erin Tufts sustained "bodily injury," such "bodily injury" arose out of and in the course of her employment by SportsZone or during the performance of duties related to the conduct of SportsZone's business.

d)       The Policies contain an Employment-Related Practices Exclusion that states that "insurance does not apply to … 'bodily injury' to … [a] person arising out of any … [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." The exclusion further precludes coverage to a spouse of such a person as a consequence of "bodily injury" to the person at whom the employment-related practices is directed. To the extent Erin Tufts sustained "bodily injury," such "bodily injury" arose out of employment-related practices.

e)       The "bodily injury" alleged by Erin Tufts and Benjamin Tufts was expected and intended by Reed and others and therefore, the Policies' exclusion for injury expected or intended from the standpoint of the insured bars coverage.

21

f)      The liability alleged in the underlying lawsuit falls outside the coverage of the Sexual Abuse & Sexual Molestation Liability Coverage Endorsement and outside the coverage of the Abuse or Molestation Coverage Endorsement.

g)      The Sexual Abuse & Sexual Molestation Liability Coverage Endorsement precludes coverage for "[a]ny person who knowingly allows any sexual abuse, molestation, or sexual exploitation committed by an 'employee' or other persons under the supervision of the insured." SportsZone, through Reed or others, knowingly allowed the abuse, molestation, and exploitation alleged by plaintiffs.

h)      The Abuse or Molestation Coverage Endorsement precludes coverage for "[a]ny person who remains passive upon gaining knowledge of any actual, alleged, or threatened abuse, molestation, or exploitation committed by an 'employee' or 'voluntary worker' of the insured." SportsZone, through Reed or others, remained passive after gaining knowledge of the abuse, molestation, and exploitation alleged by plaintiffs.

i)      Paragraph 2 of the Conditions of each of the Policies requires an insured to notify MIC as soon as practicable of an "occurrence" that may result in a claim. Reed and SportsZone knew or should have known that the misconduct alleged by Erin Tufts and Benjamin Tufts could result in a claim but they did not report the misconduct to MIC as soon as practicable.

71.     There is an actual controversy among the parties concerning MIC's duty to defend SportsZone for the claims in the underlying lawsuit.

**COUNT IV**
**(Declaratory Judgment – Duty to Indemnify – SportsZone)**

72.     MIC repeats and realleges the allegations of paragraphs 1-71.

73.    MIC does not have a duty to indemnify SportsZone for any damages incurred in the underlying lawsuit for one or more of the following reasons:

a)    The Policies do not cover "bodily injury" if an insured under Paragraph 1 of Section II of the Policies or an employee authorized to give notice of an "occurrence" or claim knew prior to the policy period that the "bodily injury" had occurred in whole or in part. Reed, and possibly others, knew, prior to the policy period that "bodily injury" has occurred in whole or in part.

b)    Neither Erin Tufts nor Benjamin Tufts sustained "bodily injury" during the 2007-08, 2008-09, 2009-10, 2010-11, or 2011-12 policy periods.

c)    Section I – Coverages, paragraph 2.e., in each of the Policies states that "insurance does not apply to … '[b]odily injury' to … [a]n employee of the insured arising out of and in the course of … [e]mployment by the insured; or … [p]erforming duties related to the conduct of the insured's business." To the extent Erin Tufts sustained "bodily injury," such "bodily injury" arose out of and in the course of her employment by SportsZone or during the performance of duties related to the conduct of SportsZone's business.

d)    The Policies contain an Employment-Related Practices Exclusion that states that "insurance does not apply to … bodily injury to … [a] person arising out of any … [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." The exclusion further precludes coverage to a spouse of such a person as a consequence of "bodily injury" to the person at whom the

employment-related practices is directed. To the extent Erin Tufts sustained "bodily injury," such "bodily injury" arose out of employment-related practices.

     e)      The "bodily injury" alleged by Erin Tufts and Benjamin Tufts was expected and intended by Reed and others and therefore, the Policies' exclusion for injury expected or intended from the standpoint of the insured bars coverage.

     f)      The liability alleged in the underlying lawsuit falls outside the coverage of the Sexual Abuse & Sexual Molestation Liability Coverage Endorsement and outside the coverage of the Abuse or Molestation Coverage Endorsement.

     g)      The Sexual Abuse & Sexual Molestation Liability Coverage Endorsement precludes coverage for "[a]ny person who knowingly allows any sexual abuse, molestation, or sexual exploitation committed by an 'employee' or other persons under the supervision of the insured." SportsZone, through Reed or others, knowingly allowed the abuse, molestation, and exploitation alleged by plaintiffs.

     h)      The Abuse or Molestation Coverage Endorsement precludes coverage for "[a]ny person who remains passive upon gaining knowledge of any actual, alleged, or threatened abuse, molestation, or exploitation committed by an 'employee' or 'voluntary worker' of the insured." SportsZone, through Reed or others, remained passive after gaining knowledge of the abuse, molestation, and exploitation alleged by plaintiffs.

     i)      Paragraph 2 of the Conditions of each of the Policies requires an insured to notify MIC as soon as practicable of an "occurrence" that may result in a claim. Reed and SportsZone knew or should have known that the misconduct alleged by Erin Tufts and Benjamin Tufts could result in a claim but they did not report the misconduct to MIC as soon as practicable.

j)      The Policies exclude coverage for punitive damages. The Sexual Abuse &
Sexual Molestation Liability Coverage Endorsement and the Abuse or Molestation
Coverage Endorsement preclude coverage for fines, penalties, punitive damages,
exemplary damages, and aggravated damages.

k)      The Sexual Abuse & Sexual Molestation Liability Coverage Endorsement
states that "[m]ultiple incidents of sexual abuse, sexual molestation or sexual exploitation
to one person, whether consisting of one or any combination among these, shall be
deemed to be one 'occurrence' and shall be subject to the limits and any other insurance
policy issued by this Company in effect at the time of the first incident even if subsequent
incidents of that 'occurrence' take place after the expiration of the policy." The Abuse or
Molestation Endorsement states: "Multiple incidents of abuse, molestation or exploitation
involving a person which take place over multiple policy periods for which this coverage
is provided by us shall be deemed as one 'occurrence' and shall be subject to the
coverage and limits in effect at the time of the first incident. If incidents of abuse,
molestation or exploitation took place over multiple policy periods for which coverage is
provided, only the coverage and limits of the Policy in effect at the time of the first
incident shall apply." To the extent it is determined that multiple incidents of abuse,
molestation, or exploitation occurred, they are one "occurrence" subject to the coverage
in effect at the time of the first incident.

l)      The 2010-11 and 2011-12 Policies state: "If this policy and any other
liability policy issued to you by the MARKEL INSURANCE COMPANY apply to the
same occurrence, the maximum limit of our liability under all such policies combined
shall not exceed the highest applicable limit of liability under any one policy among

25

them." If one or more Policies is held to apply to the same occurrence, the maximum

limit of liability available shall not exceed the highest applicable limit of liability under

any one of those Policies.

74.    There is an actual controversy among the parties concerning MIC's duty to

indemnify SportsZone for the claims in the underlying lawsuit.

WHEREFORE, MIC requests that the Court enter a declaration that MIC has no duty to

defend or indemnify Reed or SportsZone in connection with the underlying action.

MARKEL INSURANCE COMPANY

By its attorneys,


/s/ Anne Robbins
Anne Robbins (BBO# 561968)
Anderson & Kreiger LLP
50 Milk Street, 21st Floor
Boston, MA 02109
(617) 621-6500
arobbins@andersonkreiger.com

Dated: February 21, 2019